IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00922-RBJ

DEREK W. MANS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

    Defendant.

## ORDER

The Court here reviews the Social Security Administration's denial of Derek W. Mans' ("claimant") application for disability benefits under Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). The appeal became ripe upon the filing of plaintiff's reply brief on October 14, 2011. The Court apologizes for the delay in resolving this case.

**FACTS**

Assault

On August 4, 2002, Mr. Mans, then age 35, was assaulted and struck in the face with an unknown object. R. at 13. His injuries required emergency hospitalization, and he was diagnosed as suffering from a closed head injury with multiple facial fractures as well as residual symptoms including vertigo, nausea, headaches, fatigue, difficulty concentrating, and depression. R. at 13–14. Treating doctors attributed these residual symptoms to myofascial pain disorder, trigeminal neuralgia, and adjustment disorder. R. at 14.

Mr. Mans claims a date of onset of disability beginning on the day after the assault, August 5, 2002, and continuing until 2007 when he testified that he returned to work on a full-time basis. R. 25. However, because his "date last insured" was December 31, 2003, the issue presented to the agency was whether he was disabled within the meaning of the Social Security Act between August 5, 2002 and December 31, 2003. Claimant's initial request for disability benefits was denied on November 7, 2007. R. at 11. Claimant then requested a hearing before an Administrative Law Judge (the "ALJ"), which was held on August 19, 2009, in Colorado Springs, Colorado, before Kathryn D. Burgchardt. *Id.* Traci Mans, claimant's wife, testified on his behalf, and Doris J. Shriver, an impartial Vocational Expert (the "VE"), testified at the hearing. *Id.* The ALJ denied claimant disability and disability insurance benefits because she determined that claimant was not disabled during the relevant period. R. at 8, 11. After the ALJ's denial, claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied this request. R. at 1. Claimant now appeals his case to this Court.

During his testimony before the ALJ, claimant testified that his injury caused him to be incapacitated by vertigo, nausea, headaches, and constant pain in his neck. R. at 34–35. He complained that physical activity caused him pain. R. at 36. Also, claimant testified that he had memory difficulties and was constantly fatigued. R. at 36–38. Claimant's wife also testified that he had difficulties with nausea, vertigo, and memory issues following the injury. R. at 44–46.

Prior to his injury, claimant worked as a contractor, project manager, construction superintendent, and electrician. R. at 47. Mr. Mans initially testified during the ALJ hearing that in 2003 and 2004 he had his own construction company and was doing custom home and some commercial work. R. 28-29. However, after his memory was jogged by his attorney who pointed out that the records do not reflect earnings in 2003 or 2004, he remembered that he was

not doing anything in those years other than helping his wife in her real estate business on a part-time basis, doing simple computer tasks, planting signs, and making photocopies. R. at 30–31. The ALJ asked Mr. Mans about his activity levels during 2002 and 2003, but he indicated that he could not remember details about that period (which the ALJ acknowledged could be a normal result of the passage of time). R. at 32–33. Mrs. Mans testified that her husband performed menial tasks for her business, but that he was not an employee of the company or on the payroll. R. at 45–46.

Medical Records

Mr. Mans was seen by various health care professionals in the immediate days and weeks following the assault. Among others, doctors Edgar Galloway III, an ENT specialist, and Ronald Pelton, an ophthalmologist, performed surgery to repair malar complex and orbital fractures (bones in the cheeks and around the eyes) on August 27, 2002. R. at 205–07.

Beginning in December 2002, Mr. Mans saw Terry Struck, M.D., a specialist in physical medicine, rehabilitation and pain medicine, several times. On December 2, 2002 Mr. Mans told Dr. Struck that he had headaches a couple times per week that each lasted about six hours, and that he was having problems with short-term memory, concentration and organizing things. R. at 470. However, according to Dr. Struck's record, Mr. Mans reported that he worked as a custom home builder for his own company out of his home; he had lost two contracts because of his injury; he had completed all of his current contracts and had not lined up any further contracts yet; the economy had affected his business; and that he was able to work no more than 12 hours per day, whereas he was working 16 hour days prior to his assault. R. at 472.

During a February 6, 2003 visit with Dr. Struck, Mr. Mans again complained of having problems with short-term memory, concentration, and executive functioning. R. at 466. He

reported experiencing vertigo in the mornings and periodically during the day. *Id.* He did, however, report that his headaches had become rare. *Id.* He reported that he did not have any current custom home building work but was looking and advertising for contracts. R. at 467.

Mr. Mans saw Galloway again on March 3, 2003. Dr. Galloway noted that claimant suffered vertigo with occasional nausea and frequent headaches. R. at 198.

Mr. Mans next saw Dr. Struck on April 17, 2003, when he reported the return of periodic headaches, morning vertigo, periodic daytime vertigo, and again, problems with short-term memory, concentration, and executive functioning. R. at 462. He was scheduled to see Dr. Struck again on June 23, 2003. However, according to Dr. Struck's records, when the office called him on June 19, 2003 to remind him of his upcoming appointment, Mr. Mans "canceled it because of his busy work schedule." R. at 461. Mr. Mans reportedly indicated that he would call to reschedule an appointment when he could get his calendar cleared. *Id.*

The records note psychiatric issues as well. On November 6, 2007, in connection with Mr. Mans' application for disability benefits, a psychiatric assessment was performed by James F. Dyde, M.D., a psychiatrist. R. at 397-410. Dr. Dyde's interpretation of medical records was that Mr. Mans had reported difficulty sleeping, being under significant stress and possibly had indications of depression on January 17, 2002. R. at 410. There was an indication that Mr. Mans was experiencing chronic anxiety disorder on June 20, 2002. He was assaulted with a baseball bat on August 4, 2002. On August 16, 2002 his judgment and insight were reported as being normal, and his mood and affect were appropriate to the situation. *Id.*

Apparently commenting on Mr. Mans visit with Dr. Galloway on April 17, 2003, Dr. Dyde stated that Mr. Mans was "functioning independently in ADLs and mobility activities" but described "continuing difficulties w/ situational depression due to financial difficulties . . . does

4

not have any current custom home building work he decided to go into business w/ his wife spending about 4 hours a day w/ this new business and spending the rest of his day w/ litigation issues and resting," but also that while he was alert and oriented, Mr. Mans described having difficulty with executive functioning, and that his mood and affect were flat. *Id.* Dr. Dyde also noted that Mr. Mans had cancelled an appointment (to see Dr. Struck) on June 19, 2003 due to his heavy work schedule. *Id.*

Dr. Dyde's assessment concluded that, during the relevant period, Mr. Mans suffered from a concussion, R. at 399; "situational depression due to financial difficulties," R. at 401; and chronic anxiety disorder, R. at 403; but with respect to functional limitations, there was no evidence of episodes of decompensation and insufficient evidence to determine whether his mental disorders restricted his activities of daily living, social functioning or maintaining concentration, persistence or pace. R. at 408.

ALJ Decision

The ALJ followed the five-step sequential evaluation process for determining whether claimant was disabled. R. at 13–19. At step one, the ALJ essentially presumed that claimant did not engage in substantial gainful activity during the relevant period. R. at 13. She noted that the record contains numerous references to his work activity during the relevant period but commented that "development of the issue of his work activity is not being pursued, to avoid delay in the issuance of a decision." *Id.*

At step two, the ALJ determined that "claimant had the following severe impairments: adjustment disorder, myofascial pain disorder, trigeminal neuralgia, and cognitive disorder, residual to a closed head injury." *Id.*

At the third step, the ALJ found that "claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. at 14.

At step four, the ALJ found that "claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), while performing simple, unskilled work at most, involving one, two, or three step instructions." *Id.* Based on this residual functional capacity ("RFC"), the ALJ found that claimant was unable to perform any past relevant work during the relevant period. R. at 17. I note that the ALJ made this finding notwithstanding that she had also noted the entries in the medical records indicating that Mr. Mans had told doctors that he was working 12 hours a day (December 2, 2002); he was actively looking for construction work (February 6, 2003); he was working with his wife because he could not find custom home building work (April 17, 2003); and he cancelled a treatment session because of his busy work schedule (June 19, 2003). R. at 16.

For the fifth and final step, the ALJ heard testimony during claimant's hearing from the VE. R. at 47–50. The ALJ asked the VE whether there was work for a hypothetical individual with the same age, education, and past work experience as claimant and who was restricted to work that was simple and unskilled with one, two, or three-step instructions. R. at 47–48. The VE testified that such an individual would not be able to return to claimant's past work, but such an individual could work as a hand packer, a retail or wholesale marker, or a fast food worker. R. at 48. The VE further testified that there were significant job opportunities for these positions in both the regional and national economies. *Id.*

Based in large part on the VE's testimony, the ALJ determined that, considering the claimant's age, education, work experience, and residual functional capacity, "there were jobs

6

that existed in significant numbers in the national economy that the claimant could have performed." R. at 18. Accordingly, the ALJ found that claimant was not entitled to benefits because he was not disabled at any time during the relevant period. *Id.*

### STANDARD OF REVIEW

This appeal is based upon the administrative record and the briefs submitted by the parties. When reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497 (10th Cir. 1992)). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). More than a scintilla, but less than preponderance is required. *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

### CONCLUSIONS

Mr. Mans argues that the ALJ (1) did not properly consider all of his nonexertional impairments when assessing his RFC, and (2) likewise, did not properly address the impact of his specific mental limitations.

1.  **Nonexertional Impairments.**

An ALJ's RFC assessment must be based upon all of the relevant evidence of the claimant's ability to work. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). Accordingly, the ALJ must consider all of a claimant's physical and mental impairments when assessing the claimant's RFC. *Id.* at *5.

Mr. Mans argues that the ALJ did not consider his nonexertional impairments, specifically the impacts of dizziness, headaches, fatigue, and lack of stamina. *Id.* He maintains that such impairments could impede one's ability to sustain regular work activity on a full-time basis, and that the case should be remanded for consideration of these impairments. P. Br. at 7-8.

The ALJ did acknowledge that Mr. Mans experienced vertigo, depression, fatigue, headaches, and that he had difficulty concentrating because of myofascial pain disorder and trigeminal neuralgia, as well as adjustment disorder. R. at 13–14. Myofascial pain and trigeminal neuralgia are painful and potentially disabling conditions. However, the ALJ did not find those to be disabling impairments in this instance. R. at 14–17. In substance the ALJ found that Mr. Mans' assertions that he could not work were not credible, in light of his comments to Dr. Struck and to Dr. Struck's staff between December 2, 2002 and June 19, 2003, as noted above in the discussion of the medical records, and the fact that he admits that he performed light work for his wife's real estate business during the relevant time period.

The Court does not doubt that Mr. Mans suffered physical consequences from the assault that continued throughout the relevant period, nor does the Court doubt that his injuries had an impact on his ability to work. Both the testimony at the hearing and the medical records so indicate. However, the Court also finds that the significance given to these impairments by the

ALJ was supported by "substantial evidence" in the record. *See* R. at 16, 30–31, 45–46, 397–410, 461, 466, 472. As indicated above, that is the standard that the Court must apply in this review. Accordingly, the Court finds no good ground to remand the case for further consideration of the impact of Mr. Mans' nonexertional impairments.

### 2. **Mental Limitations.**

Claimant secondly argues that the ALJ failed to properly consider the impact of claimant's mental impairments. When a "claimant establishes existence of severe mental impairment that does not meet the listings, [the ALJ] must use [VE] testimony or other similar evidence to meet his burden of showing claimant can perform jobs available in the national economy." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citing *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989)). Furthermore, when using VE testimony, the ALJ must express nonexertional capacity in terms of work-related functions. SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). For example, when assessing an RFC for an individual with mental impairments, the ALJ should consider the individual's ability to: "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

First, I note the finding of the psychiatrist, Dr. Dyde, who found from his review of the medical records that there was insufficient evidence to determine that Mr. Mans' mental disorders restricted his activities of daily living, social functioning or maintaining concentration, persistence or pace.

Second, the Court notes that the ALJ instructed the VE to "assume that this individual would require work which is simple and unskilled with one, two or three-step instructions." R.

at 47–48.  These instructions relate to the claimant's ability to understand, remember, and carry out instructions.  *See* SSR 96-8p, at *6.  There is substantial evidence in the record that supports the ALJ's hypothetical.  During the relevant period claimant complained of having problems with short-term memory and concentration.  R. at 462, 466, 470.  However, there was little evidence that he had poor judgment, could not appropriately respond to work supervision, or could not handle changes in a routine work setting.  *See* R. at 408, 462, 466, 470.  Moreover, as indicated above, the ALJ essentially found that Mr. Mans' position regarding his inability to do work during the relevant period was not entirely credible.

Accordingly, the Court finds that the ALJ adequately addressed the impact of claimant's mental impairments, and that the ALJ's instructions to the VE were supported by substantial evidence.  The Court is not able to conclude, after review of the record, that the ALJ's RFC assessment did not properly address the impact of claimant's mental impairments.

**ORDER**

The decision of the ALJ is affirmed.

DATED this 14th day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge